**James E. REDMOND,**
**Plaintiff-Appellant,**

**v.**

**DRESSER INDUSTRIES, INC., a corporation, Harbison-Walker Refractories, U.S., a corporation, et al., Defendants-Appellees.**

**No. 83–7610**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

June 18, 1984.

Henry D. Binford, Ariton, Ala., for plaintiff-appellant.

Cabaniss, Johnston, Gardner, Dumas & O'Neal, Sydney F. Frazier, Jr., Birmingham, Ala., for defendants-appellees.

Before HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

James Redmond appeals from the district court granting of a summary judgment in his breach of contract suit against Dresser Industries and Harbison-Walker Refractories. Redmond was hired by Harbison-Walker, a division of Dresser Industries, as a laborer in Harbison's Eufaula, Alabama plant on April 27, 1970. Redmond's job as a laborer placed him in a bargaining unit represented by the United Mineworkers. The collective bargaining agreement between UMW and the company provided that any employee promoted to a supervisory job and later not needed in that position could be returned to his former job provided that his seniority entitled him to such a job. After working two months as a laborer, Redmond accepted a transfer to a non-bargaining unit position in the quality control department. In 1972, the United Steelworkers succeeded UMW as the collective bargaining representative for production and maintenance workers at the plant. The United Steelworkers' agreement contained a reinstatement policy similar in nature to the one in the UMW contract, which provided that an employee could be transferred back to a bargaining unit job only if he had occupied the non-bargaining unit job for less than six months. All the collective bargaining agreements between bargaining unit employees and Harbison during Redmond's years with the company included grievance and arbitration provisions.

In 1982, after working for twelve years as a non-bargaining unit employee, Redmond was laid off by Harbison. He asked to be returned to a bargaining unit position, but the company refused because of the provision of the contract which cut off the right to reinstatement after six months. Redmond claimed that he had been informed that in 1970 the newer provision would not be applied to him. He complained to his supervisor and other company officials but could not convince them to give him a bargaining unit position. Redmond made no attempt to follow the grievance procedures set out in the collective

bargaining agreement applicable at the time of his layoff. Instead, he filed suit in the Circuit Court of Jefferson County, Alabama for breach of contract, fraud, outrage and bad faith. Dresser and Harbison filed a petition for removal citing federal district court jurisdiction on the basis of § 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185(a) (West 1978), and diversity. The case was then removed to the Northern District of Alabama where summary judgment was entered against Redmond. The district court found that since Redmond invoked the collective bargaining agreement in his suit, he was bound by it and his failure to exhaust the applicable grievance barred him from bringing suit. The district court also noted that Redmond had failed to prove that his case fell within either of the exceptions to the general rule requiring exhaustion of remedies.

■ Redmond raises two alternative claims on appeal, that he was not required to exhaust his remedies and that if he was so required he raised genuine issues of material fact as to whether his case falls into the two exceptions to the rule. Redmond's first claim is based upon a basic misapprehension about remedies available to him through the grievance procedure of the collective bargaining agreement and the federal courts. On appeal, Redmond denies that his complaint confers federal subject matter jurisdiction under § 301 LMRA.[1] An examination of the complaint reveals that appellant's claims of breach of contract, fraud, outrage and bad faith all derive from his layoff by Harbison and the company's subsequent refusal to reinstate him to a bargaining unit job in accordance with the UMW collective bargaining agreement. By its terms, the complaint admits that Redmond's rights arise under the collective bargaining agreement. As the district court correctly noted, Redmond cannot claim both a separate, individual employment agreement and an employment agreement tied to the collective bargaining agreement. This case clearly presents a suit for violation of a contract between an employer and a labor union representing employees and therefore falls within § 301 LMRA. The district court's characterization of Redmond's suit as one arising under § 301 is required by federal preemption doctrines. *See Fristoe v. Reynolds Metal Co.*, 615 F.2d 1209, 1212 (9th Cir.1980). The Supreme Court established in *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957), that federal substantive law applies in suits under § 301 and in *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 102–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962), that when principles of federal law are involved, as they are in § 301 suits, they prevail over state law.

■ An employee claiming a breach by his employer of the collective bargaining agreement is bound by the terms of that agreement as to the method for enforcing his contractual rights. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). For this reason, the employee must attempt to use the grievance and arbitration procedure established by the employer and union in the collective bargaining agreement prior to bringing suit in federal court. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Despite Redmond's claim on appeal that he made a good faith attempt at adherence to the terms of the grievance procedure, it is clear from the record that he never took the first step of presenting his written grievance to the plant manager or the grievance committee.

---

**1.** Section 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C.A. § 185(a), provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

■ An employee may bring suit without attempting to exhaust the remedies provided in the collective bargaining agreement if he can show that the conduct of the employer amounts to a repudiation of the remedial procedures in the agreement or if the union wrongfully refuses to process the grievance. *Vaca v. Sipes*, 386 U.S. at 185, 87 S.Ct. at 914, 17 L.Ed.2d at 855. The district court found that since neither of the exceptions to the exhaustion requirement had been alleged, it could not adjudicate the case. On appeal, Redmond argues that his affidavit submitted in response to the motion for summary judgment raises issues of material fact with regard to both exceptions. He claims first that the company repudiated the grievance procedure by laying him off despite a provision in procedure (Art. VI, UMW agreement) that provided in part that "Should differences arise between the company as to the meaning and application of the provisions of the contract, there shall be no suspension of work on account of such difference ...." By laying him off and not allowing him to return to work, Redmond argues, Harbison led him to believe that the grievance procedure did not apply to his case. The provision in question evidently envisions that employees will not stop work if they have a grievance but instead will continue working while the complaint is being settled. Even if this meaning is not clear in Art. VI, as it is in a similar provision in the Steelworkers' grievance procedure, a complete reading of Article VI would have informed Redmond that the grievance procedure was slightly different for anyone discharged or suspended. The grievance procedure does not suggest that such employees will be kept on the work force until their grievances have been handled. (6.3, Art. VI). The company's initial decision to lay off Redmond and its subsequent refusal to agree with Redmond's position that he was entitled to be reinstated under the terms of the UMW collective bargaining agreement do not constitute repudiation of the grievance procedure. *See Rabalais v. Dresser Industries, Inc.*, 566 F.2d 518, 519 (5th Cir.1978). Although Redmond contends that company officials also repudiated the procedure by misleading him about the correct grievance procedures, he provides no evidence to support this. Judging from Redmond's affidavits, the company officials he spoke to simply refused to grant him reinstatement. In any event, before Redmond can assert repudiation of the grievance procedure, he must first file his grievance.[2]

■ Redmond also contends that while the union did not wrongfully refuse to process his grievance, it would have been futile for Redmond to seek assistance because the union occupied a position hostile to his own. Appellant bases this contention upon the fact that the collective bargaining agent at the time he was hired was replaced by a union which did not represent him. He particularly points to the fact that he was barred from participation in the meetings where the plant laborers chose the successor union. Since Redmond had been a non-bargaining unit employee for two years before the successor union was chosen, it was entirely appropriate that he have no voice in the selection of the new union. Appellant's assumption of union hostility bears no weight since the record clearly shows that he never considered approaching the union for help with his problem even though he was seeking reinstatement in a bargaining unit job. After viewing all the evidence in the light most favorable to Redmond, it clearly appears that the defendants sustained their burden of showing the absence of a genuine issue as to any material fact. For the foregoing reasons, the granting of the motion for summary judgment is

AFFIRMED.

---

**2.** Both bargaining agreements clearly set forth the method by which a grievance may be filed. An employee cannot complain about the employer's or the union's frustration of the grievance procedure until he first starts the procedure. "It cannot be said in the normal situation, that contract procedures are inadequate to protect the interests of the aggrieved employee until the employee has attempted to implement the procedures and found them so." *Republic Steel Corp. v. Maddox, supra,* 379 U.S. at 653, 85 S.Ct. at 616, 13 L.Ed.2d at 583.