**Sam MALIA and Ingrid Malia, Appellants,**

v.

**RCA CORPORATION.**

No. 85–5767.

United States Court of Appeals, Third Circuit.

Argued June 2, 1986.

Decided July 10, 1986.

Rehearing and Rehearing In Banc Denied Sept. 3, 1986.

Lawrence A. Durkin, (argued), Tellie, Durkin, Weinberger, Murphy & Piazza, P.C., Scranton, Pa., for appellants.

John H. Leddy (argued), Frank C. Sabatino, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee; Grady B. McMillion, Counsel, Indus. Relations, Princeton, N.J., of counsel.

Before GIBBONS, BECKER, and STAPLETON, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge:

At issue on this appeal is whether section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a) (1982), preempts an employer's state-law claims for breach of an oral contract of employment, intentional infliction of emotional distress, fraudulent misrepresentation, and intentional interference with contract and also preempts a derivative action by the employee's wife for loss of consortium. The district court reasoned that the state-law claims were dependent upon a collective bargaining agreement and therefore held that the claims were preempted by federal law. Although the court went on to construe the complaint as alleging claims under § 301 of the LMRA, it grant-

ed summary judgment in favor of the employer because the complaint was not filed within the applicable six-month statute of limitations. Because we conclude that the district court misconstrued the nature of the employee's state-law claims, we reverse.

This appeal arises out of a labor dispute in which the plaintiff, Sam Malia, sought to be reinstated to a job within a collective bargaining unit after Malia had been promoted to a supervisory position.[1] Malia had worked as an hourly employee for the defendant, RCA Corporation, from 1966 until April 9, 1984. In connection with his job as an hourly employee, Malia had been a member of a bargaining unit represented by Local 178 of the International Union of Electrical, Radio and Machine Workers. In early April of 1984 Malia, in his capacity as president of Local 178, attended a dinner at which RCA's plant manager, Harlon May, offered to promote Malia to inventory coordinator, a managerial position outside the Local 178 bargaining unit. As an inducement to accepting the promotion, May promised Malia better pay, increased hours and overtime, advancement within the company, less stressful working conditions, and the option to return to the bargaining unit if Malia was not satisfied with the new position. *See* Malia's Complaint at ¶ 6, *reprinted in* Joint Appendix at 4. Malia accepted RCA's offer and began to perform his job as inventory coordinator on April 9, 1984. In less than three weeks Malia requested that he be returned to his former position as soon as such a position became available. On April 28, 1984, such a position became available, but RCA's management did not accede to Malia's request for reassignment. As a result, he

has remained in the position of inventory coordinator.

 Whether a state-law claim is preempted by federal law is a question of congressional intent. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). Section 301 of the LMRA provides a federal right of action for violations of contracts between an employer and a labor organization representing employees. 29 U.S.C. § 185(a) (1982).[2] This statutory provision reflects a congressional intent to ensure that federal common law is applied to the enforcement of collective bargaining agreements. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). While Congress did not state to what extent it intended § 301 to preempt state law, *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985), the Supreme Court has recently explained that

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* at 1911. Thus, in *Allis-Chalmers* the Court held "that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Id.* at 1916 (citation omitted). The focus of inquiry in determining § 301 preemption, therefore, is on the nature of the state-law claims be-

---

1. Because this is an appeal from a summary judgment we accept the facts as pleaded in Malia's complaint as true. *See United States v. Athlone Industries, Inc.*, 746 F.2d 977, 981 (3d Cir.1984). Our discussion should not, therefore, be construed as bearing on the question of whether the oral contract alleged by Malia has been established as a factual matter.

2. Subsection (a) of § 301 reads,

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1982).

cause state-law claims that are independent of collective bargaining agreements are not preempted by § 301 of the LMRA. *Id.* at 1912. A logical corollary to the rule preempting state-law claims that depend on collective bargaining agreements is the rule that employees who are members of a collective bargaining unit cannot negotiate individual contracts that are inconsistent with the collective bargaining unit cannot negotiate individual contracts that are inconsistent with the collective bargaining agreement. *See J.I. Case Co. v. NLRB*, 321 U.S. 332, 337–39, 64 S.Ct. 576, 580–81, 88 L.Ed. 762 (1944); *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 362 (5th Cir.1984); *see also NLRB v. Allis-Chalmers Manufacturing Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967). ("[National labor] policy ... extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees.... Thus only the union may contract the employee's terms and conditions of employment.")

[4–7] In the case now under consideration the district court reasoned that Malia's state-law claims depended upon an interpretation of a provision of the Local 178 collective bargaining agreement which the court believed governed Malia's right to be reinstated to the bargaining unit. *See Malia v. RCA Corp.*, No. 85–0721, slip op. at 6–7 (M.D.Pa.Oct. 17, 1985). The provision of the Local 178 contract that the district court was referring to provides in relevant part,

When an employee has established seniority privileges in an occupational classification within the Bargaining Unit and is or has been thereafter transferred or promoted to another position which is not within the Bargaining Unit, *in the event such employee is again restored to a position within the Bargaining Unit*, such employee shall be deemed to have retained but not accumulated seniority privileges within the Bargaining Unit in accordance with Article 56, provided that the privilege of returning to the Bargaining Unit shall be extended to all employees so affected.

Supplementary Local Agreement between RCA and Local 178 at ¶ 56.04, *reprinted in* Joint Appendix at 58 (emphasis supplied). A careful reading of this paragraph reveals that the district court was mistaken. Paragraph 56.04 of the Local 178 collective bargaining agreement does not govern the right *to be* reinstated. Rather it governs the issue of seniority *if* an employee is reinstated to the bargaining unit.[3] In part the district court's misinterpretation can be explained by Malia's misleading reference to paragraph 56.04 in his Complaint. Malia's breach of contract claim alleges, "The Defendant by not reinstating the Plaintiff back into the Bargaining Unit at the Plaintiff's request when a position was available has breached Paragraph 56.04 of the Supplemental Local Agreement between RCA Corporation and Local No. 178." Malia's Complaint at ¶ 16, *reprinted in* Joint Appendix at 6. To the extent that this claim relies on the Local 178 collective bargaining agreement, the claim is preempted. However, Malia's Complaint also alleges facts that would support a claim for breach of an oral contract. *See* Malia's Complaint

---

3. Focusing on the clause—"provided that the privilege of returning to the Bargaining Unit shall be extended to all employees so affected"—the dissent interprets section 56.04 of the collective bargaining agreement as "establishing a right to reinstatement for all employees who have left the bargaining unit." Dissenting opinion at 914. The clause that the dissent relies upon, however, is more logically interpreted as a provision dealing with group transfer situations. For example, if RCA transferred a group of employees to another occupational classification outside the bargaining unit, section 56.04 would require that if one former unit member

was restored to the unit and given her old seniority, the rest of the group would have the option of also returning to the bargaining unit with their old seniority. Thus the clause upon which the dissent relies does not provide a *per se* right of reinstatement, rather it provides a right for union employees to be treated equally. Equal treatment among union members is often an objective of collective bargaining agreements. Moreover, the dissent's interpretation of section 56.04 would give supervisors—employees who the LMRA expressly excludes from its statutory protection, *see infra* footnote 4—the protection of a collective bargaining agreement.

at ¶¶ 5, 6, and 7, *reprinted in* Joint Appendix at 4. This oral contract is a completely separate agreement from the collective bargaining agreement. In addition this oral contract is not preempted by the rule prohibiting members of a collective bargaining unit from negotiating inconsistent individual contracts. Although Malia was a member of Local 178 when he negotiated the alleged oral contract, the oral contract relates to the job of inventory supervisor—a management position outside the Local 178 bargaining unit. Nothing in the LMRA prevents an individual—whether that individual is to be newly hired or promoted from a bargaining unit—from negotiating an employment contract for a management position.[4] Nor does LMRA prevent an individual—whether an applicant for new employment or a current employee in a supervisory position—from negotiating for a job in a bargaining unit so long as that employment will be on the terms and conditions set forth in the collective bargaining agreement.

█ Thus, because we construe Malia's Complaint as alleging a state-law breach of contract claim based on an oral employment contract we conclude that that claim and Malia's state-law tort claims, which derive from the breach of the oral contract, are independent of and do not interfere with the Local 178 collective bargaining agreement. We, therefore, hold that the district court erred in concluding that Malia's state-law claims were preempted by § 301 of the LMRA. Given this conclusion, the district court's decision concerning the statute of limitations is irrelevant. The six-month statute of limitations applicable to claims under § 301 of the LMRA does not govern state-law contract and tort claims. The summary judgment will, therefore, be reversed.

BECKER, Circuit Judge, dissenting.

In this case we are called upon to determine whether the Malias' claims, which are framed as state common law issues, in fact arise under a collective bargaining agreement. If the claims depend on the collective bargaining agreement, they must be resolved under federal law, pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), and they are time barred. *See Del Costello v. Teamsters,* 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983).

The majority characterizes the Malias' claims as allegations of breach of an oral contract that is independent of the collective bargaining agreement, and therefore holds that the claims may properly be brought under state law. Because I believe that the right to reinstatement that the Malias seek to enforce is governed by the collective bargaining agreement, and is therefore preempted by federal labor law, I respectfully dissent.

Mr. Malia left his position as a laborer for RCA, in which he was a member of a collective bargaining unit, to accept a position as inventory coordinator. Mr. Malia's new job was a managerial position not within the bargaining unit, and Mr. Malia alleges that he accepted it on the strength

---

4. The LMRA expressly excludes a "supervisor" from its definition of an "employee." *See* 29 U.S.C. § 152(3) (1982). As § 301 is concerned with a contract between employers and organizations representing "employees," 29 U.S.C. § 185(a) (1982), § 301 is not affected by a contract between an employer and a supervisor.

RCA cites *Redmond v. Dresser Industries, Inc.,* 734 F.2d 633 (11th Cir.1984) (per curiam) for the proposition that former bargaining unit members cannot bring state-law claims based on an individual employment contract. Brief for RCA at 9. RCA, however, has misinterpreted the *Redmond* decision. *Redmond* involved a suit based on a collective bargaining agreement. *See* 734 F.2d at 635–36; *Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1223–24 (11th Cir. 1985) (discussing the *Redmond* decision), *cert. denied,* —— U.S. ——, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). It would be illogical to preempt an employment contract merely because the employee had formerly been a member of a collective bargaining unit. Only where the former unit member relies on the collective bargaining agreement—the situation in *Redmond*—would such a rule be consistent with the Supreme Court's reasoning in *Allis-Chalmers.*

of several oral promises made to him by plant manager Harlon May. These promises included increased overtime, better pay, advancement with the company, less job-related stress, and the option to return to his former position if the new situation did not prove satisfactory.

After only a short time at his new position, Mr. Malia found that the job of inventory coordinator was not to his liking and requested reinstatement to the bargaining unit. When this request was denied, Mr. Malia brought suit under several common law theories, seeking to enforce his oral contract with Mr. May.

At issue here is whether a claim for reinstatement to the bargaining unit is covered by the terms of the collective bargaining agreement. Section 56.04 of the collective bargaining agreement sets forth the seniority privileges of persons who return to the bargaining unit after leaving it. According to the majority, this section does not govern the right *to be* reinstated to the bargaining unit, but only the right of seniority *if* an employee is reinstated. Under this interpretation, the right to reinstatement is not covered by the collective bargaining agreement, and hence Mr. Malia was free to enter into an independent contract for reinstatement and to sue for enforcement of that contract at common law.

I do not agree with the majority's reading of § 56.04. The last clause of the portion of § 56.04 that is quoted by the majority indicates that the right to be reinstated is indeed governed by that section of the collective bargaining agreement. Section 56.04 provides that an employee who returns to the bargaining unit:

> shall be deemed to have retained but not accumulated seniority privileges within the Bargaining Unit in accordance with

Article 56, *provided that the privilege of returning to the Bargaining Unit shall be extended to all employees so affected.* Supplementary Local Agreement between RCA and Local 178 at p. 56.04, *reprinted in* Joint Appendix at 58 (emphasis added). I read the emphasized clause as establishing a right to reinstatement for all employees who have left the bargaining unit. I recognize that the purport of the clause upon which I rely is not immediately clear. However, I believe that my interpretation is the most reasonable reading; indeed, it appears to be the only way to make sense of the clause.[1]

Moreover, any close question about the scope of the coverage of the collective bargaining agreement should be resolved in favor of a broad reading because strong federal policy interests support such coverage. If an issue is covered by a collective bargaining agreement, it not only falls within federal jurisdiction, but, assuming the agreement contains an arbitration provision, it is resolved in the first instance by an arbitrator. Thus, a conclusion that an issue is governed by the collective bargaining agreement furthers "interpretive uniformity and predictability," *Allis-Chalmers*, 105 S.Ct. at 1911, and the preservation of the central role of arbitration in our system of industrial self-government. *Id.* at 1915.

The majority characterizes the oral contract between Mr. Malia and Mr. May as one that related solely to the terms and conditions of the managerial position of inventory supervisor. It points out that the oral contract is therefore not "preempted by the rule prohibiting members of a collective bargaining unit from negotiating inconsistent individual contracts," for "[n]othing in the LMRA prevents an indi-

---

1. The district court apparently assumed that by merely addressing the issue of seniority upon reinstatement, the collective bargaining agreement preempted the entire area of reinstatement. The district court did not determine whether § 56.04 provided for a right to reinstatement, but found that the Malias' claims were preempted by federal law because they were "dependent upon an interpretation of whether paragraph 56.04 of said local agreement confers an unabridged right to reinstate-

ment in the collective bargaining unit upon any union employee who takes a managerial position and then wishes to resume his former status." Joint Appendix at 81–82. Under this approach, it appears that even if the federal court found that § 56.04 conferred no such right, it would not then decide the issue under state common law. I need not go so far as this approach because I find that § 56.04 *does* confer a right to reinstatement in the bargaining unit upon any employee who wishes to return.

vidual ... from negotiating an employment contract for a management position." Majority Opinion, typescript at 8. However, although the oral contract did, for the most part, pertain to the position of inventory supervisor, the single term that Mr. Malia is seeking to enforce—reinstatement to his former position—is one that not only impinges upon the bargaining unit, but is provided for in the collective bargaining agreement. Were Mr. Malia attempting to enforce the other terms of the oral contract, such as the promise of more overtime as an inventory coordinator, this would be a different case.[2]

I would affirm the judgment of the district court.

---

**2.** The majority states that "[i]t would be illogical to preempt an employment contract merely because the employee had formerly been a member of a collective bargaining unit." Majority opinion, at 913, n. 4. This is certainly true. However, it does not follow that "[o]nly where the former unit member *relies* on the collective bargaining agreement would such a rule be consistent with the Supreme Court's reasoning in *Allis-Chalmers." Id.* (emphasis added). The rule is that no employee may contract independently for a condition of employment that is covered by the collective bargaining agreement. Reinstatement to the bargaining unit is such a condition. Mr. Malia cannot enforce an oral contract concerning reinstatement because that area of employment relations has been preempted by the collective bargaining agreement. Therefore, it does not matter that he is not *relying on* the collective bargaining agreement, but rather on an oral contract.