Daniel Stern, Harrisburg, Pa., for plaintiff.

Richard Brean, Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., for United Steelworkers.

Paul H. Zoubek, Philadelphia, Pa., for Bethlehem Steel Corp.

**John KERN, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, LOCAL NO. 1688, and Bethlehem Steel Corporation, Defendants.**

Civ. No. 86–0523.

United States District Court, M.D. Pennsylvania.

May 28, 1987.

MEMORANDUM

HERMAN, District Judge.

Plaintiff brought this action against the defendants Union and Company as a hybrid breach of contract and breach of the duty of fair representation action under § 301 and § 9(a) of the National Labor Relations Act, 29 U.S.C. §§ 159(a) and 185, with pendent state claims. The Complaint contains six separate causes of action. The first two causes of action are against the Union and allege a breach of the duty of fair representation and intentional interference with contractual rights. The third cause of action is against both the Union and Company and alleges a conspiracy under state laws. The final three causes of action are against the company alone. They allege breach of contract and wrongful discharge under state law and Breach of Collective Bargaining Agreement under § 301 of the National Labor Relations Act.

Defendants have filed summary judgment motions asking for judgment in their favor on the grounds that the state causes of action are preempted by federal law, and the federal cause of action is barred by the six-month statute of limitations. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In addressing these motions for summary judgment, we will consider all undisputed facts presented in the depositions and affidavits filed by the

parties. Where there appears to be an issue of fact, we will resolve it, for purposes of these motions only, in favor of plaintiff.

Plaintiff Kern was hired as an hourly employee by Bethlehem Steel Company in 1972 to work at the Steelton plant in Steelton, Pennsylvania. Plaintiff became a member of the United Steelworkers of America, Local No. 1688 and was represented by that union in bargaining for his rights under the collective bargaining agreement. Plaintiff worked as an hourly employee in the west end machine shop until July, 1979. At that time, he was offered the job of planner, a non-bargaining unit position. Plaintiff was hesitant to accept a non-bargaining unit position and asked for assurances that he would be "left back in the unit as an hourly man if [he] didn't like the job or if things change or if my job was eliminated." Kern deposition at 22. Plaintiff reports that he discussed his concerns with a superior in the company, Paul Orner:

At that time he said he could not give me that answer. He said he would find out. So he talked—in the meantime he talked to Bob Logan which was the superintendent of the mechanical department. He is the one that was over the whole mechanical deal there. He had approached Bob about this. Bob said no problem. He said when you are taking that kind of job, an exempt salaried job, you automatically have the right to come back in the bargaining unit at any time.

Kern deposition at 22–23.

Plaintiff accepted the job as planner and worked in that capacity until February, 1985, when his position was abolished as part of a reduction in force. Plaintiff was given the choice of being laid off as a salaried employee, of being laid off as an hourly employee with the chance to be called back as an hourly employee, and of taking severance pay as of February, 1985. Plaintiff elected to return to the bargaining-unit as an hourly employee. He was immediately laid off as an hourly employee because "at the time, there was no opening in the shop for me to take ... so I couldn't

right then and there go into the union, into the shop and take up a job right off the bat. So I elected to take a layoff which was normal because there was no opening." Kern deposition at 28.

At the beginning of April, 1985, plaintiff was called back to work as a laborer in the machine shop. He worked as a laborer until August 9, 1985, when he was again laid off. This time, the layoff was because the company and the union agreed that plaintiff's bargaining unit seniority rights were terminated under the collective bargaining agreement when he ceased to be an hourly employee and became a salaried planner. Because no other position was available to plaintiff, given his lack of seniority rights, the company informed him on August 9, 1985 that he was permanently laid off from the company.

The basis for the company's decision to lay off plaintiff on August 9, 1985, was a clause in the collective bargaining agreement that reads as follows:

*Promotion to Supervisory Position:* If an Employee has been or shall be promoted to a supervisory position, he shall retain and continue to accumulate seniority rights in the seniority unit from which he was or shall be so promoted.

Article X–Seniority, § 13(b). The company and the union both agreed, in August 1985 and now, that plaintiff's non-bargaining unit-planner position was not "supervisory," and therefore that plaintiff retained no seniority rights in the machine shop unit to which he was returned.

Plaintiff makes two basic arguments in his complaint. First, he disagrees with the interpretation given to the terms of the collective bargaining agreement. He argues that his planner job was in fact supervisory within the terms of the agreement, and therefore that the company and the union both breached their duties when he was laid off in August 1985. The second basic argument is that plaintiff in fact made a separate oral contract with the company when he accepted the planner position. He argues, and we accept for the purposes of this memorandum, that the assurance he received from the company

that "when you are taking that kind of job, an exempt salaried job, you automatically have the right to come back in the bargaining unit at any time," was a separate oral contract and not just an interpretation of the collective bargaining agreement. The state law claims for conspiracy, breach of contract, wrongful discharge, and intentional interference with contractual rights, are all, according to plaintiff, based on the existence of this separate oral contract.

Defendants argue in their summary judgment motions that plaintiff's federal cause of action for breach of the collective bargaining agreement and breach of the duty of fair representation is barred by the six-month statute of limitations. Plaintiff in his brief in opposition to the motions concedes that his cause of action based on federal law is, in fact, barred. Plaintiff argues, however, that all of his state-law causes of action based on the separate oral contract are not barred. Defendants respond that these state-law claims are preempted by federal law. This is the issue we must address today.

The Supreme Court in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) defined when a state law claim is preempted by the remedies provided in the National Labor Relations Act: "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract, that claim must either be treated as a § 301 claim, ... or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1916. In *Malia v. RCA Corporation*, 794 F.2d 909 (3d Cir.1986), the Third Circuit interpreted the Supreme Court's holding in a case similar to the one before us.

In *Malia*, the plaintiff accepted a promotion to a nonbargaining unit position on the promise of a superior that he would retain "the option to return to the bargaining unit if [he] was not satisfied with the new position." *Malia, supra*, at 911. After a few weeks in the new job, Malia requested that he be returned to his former position. When his former position became

available, RCA refused to return Malia to the bargaining unit. Malia brought suit after the statute of limitations had run on his federal claims under the National Labor Relations Act. He based his action on the alleged oral promise that he could be reinstated in the bargaining unit. The Third Circuit reversed a district court determination that the state law claims were preempted by first interpreting the collective bargaining agreement to determine if the oral contract was in any way dependent on the terms of that agreement. The agreement provided,

> When an employee has established seniority privileges in an occupational classification within the Bargaining Unit and is or has been thereafter transferred or promoted to another position which is not within the Bargaining Unit, *in the event such an employee is again restored to a position within the Bargaining Unit,* such employee shall be deemed to have retained but not accumulated seniority privileges within the Bargaining Unit in accordance with Article 56 ...

*Malia, supra*, at 912.

The *Malia* court interpreted the above language to be a guarantee not that a transferred employee had the *right* to be reinstated, but rather a guarantee that an employee would retain his past seniority if he were reinstated to the bargaining unit. The court then held that the alleged promise to Malia that he could return to the bargaining unit if he was not satisfied with the new position was a separate oral contract, "a completely separate agreement from the collective bargaining agreement." *Id.* at 713. The oral contract was not dependent on or inconsistent with the collective bargaining agreement, because

> [a]lthough Malia was a member of Local 178 when he negotiated the alleged oral contract, the oral contract relates to the job of inventory supervisor—a management position outside the Local 178 bargaining unit. Nothing in the LMRA prevents an individual ... from negotiating an employment contract for a management position. Nor does LMRA prevent an individual ... from negotiating for a job in a bargaining unit *so long as that*

*employment will be on the terms and conditions set forth in the collective bargaining agreement.*

*Id.* (emphasis supplied).

In the instant case, as in *Malia,* the relevant portion of the collective bargaining agreement appears only to guarantee seniority status *if* an employee is reinstated and not to guarantee reinstatement itself. The language simply states that an employee promoted to a supervisory position "shall retain and continue to accumulate seniority rights in the seniority unit from which he was ... promoted." There is no language in the collective bargaining agreement itself that even remotely guarantees reinstatement.

Also as in *Malia,* the oral promise in the instant case appears to be a guarantee that plaintiff could be reinstated in his old job should something go wrong with the planner position. But, unlike *Malia,* the promise as alleged by plaintiff also appears to imply a guarantee that plaintiff could be reinstated in the bargaining unit with full seniority rights. It is at this point that the facts of the instant case cease to resemble the facts addressed in *Malia.* In this case, plaintiff *was* returned to an hourly status in the machine shop when he was laid off from his planner position. The company in this case, unlike the company in *Malia,* fulfilled the term of the oral contract that promised reinstatement. The company did not, however, treat plaintiff as having any accumulated seniority rights, and eventually put plaintiff on permanent lay-off with severance pay.

Plaintiff argues that this court can enforce the term of the oral contract that implied reinstatement with full seniority rights because that term is neither dependent on nor inconsistent with the terms of the collective bargaining agreement that promise full seniority rights to returned supervisory employees. Accepting, for the moment, that plaintiff's interpretation of the collective bargaining agreement is correct and that a planner position is supervisory, we still cannot hold under *Malia* that the implied seniority term of the oral contract is enforceable. The court in *Malia*

expressly stated that the Labor Management Relations Act does not prevent an employee from negotiating an agreement for a job in the bargaining unit separate from the collective bargaining agreement, but that the agreed-upon-employment must "be on the terms and conditions set forth in the collective bargaining agreement." *Malia, supra,* at 913. Seniority and its accumulation is an express term of the collective bargaining agreement in the instant case. Plaintiff's reinstatement, therefore, could only be governed by the terms of that agreement, not by the terms of the oral contract, even if the seniority terms are identical. Plaintiff cannot, therefore, sue to enforce the seniority term of the oral contract, even though he could have enforced the reinstatement term, had that term been breached.

Our conclusion that the seniority term of the oral contract cannot be enforced under state law even though it is not, according to plaintiff, inconsistent with the terms of the collective bargaining agreement is supported by our concern for enforcing federal requirements such as exhaustion of grievance or arbitration remedies, and for enforcing a uniform and balanced six-month statute of limitations. *See DelCostello, supra,* 462 U.S. at 171, 103 S.Ct. at 2294. If employees were free to negotiate and enforce separate oral agreements identical to the collective bargaining agreements under which they labored, and then if they were permitted to enforce these oral agreements under state law, much of the federal concern for swift resolution of disputes through grievance and arbitration procedures, or through immediate court intervention, and for consistent interpretation of contract terms would be undermined. Plaintiffs would be free to rely on longer state statutes of limitations, and they would be free to ignore grievance/arbitration procedures. The uniform federal common law growing out of the Labor Management Relations Act that courts have been so careful to protect would be circumvented and ineffectual. *See Allis-Chalmers Corp. v. Lueck, supra,* 471 U.S. at 214, 105 S.Ct. at 1913.

Because plaintiff's federal-law claims are barred by the six-month statute of limitations, and because plaintiff's state-law claims are preempted by federal law, we will grant summary judgment in favor of the defendants.